**HAWAII TEAMSTERS AND ALLIED WORKERS, LOCAL 996, IBT, Paul Culpepper and Wren Whittle, Plaintiffs,**

v.

**CITY EXPRESS, INC., and Richard B. Emery, individually and as fiduciary, Defendants.**

**Civ. No. 90–00026 ACK.**

United States District Court, D. Hawaii.

Aug. 1, 1990.

Graulty Ikeda and Ramirez–Uy, Reynaldo D. Graulty, Wesley H. Ikeda, Honolulu, Hawaii, for plaintiffs.

Torkildson Katz Jossem Fonseca Jaffe & Moore, John L. Knorek, Perry W. Confalone, Honolulu, Hawaii, for defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

KAY, District Judge.

## INTRODUCTION

Defendants City Express, Inc. and Richard B. Emery (collectively "Defendants" or

"City Express Defendants") move to dismiss or in the alternative for summary judgment Plaintiffs' claims against them. Plaintiffs Hawaii Teamsters and Allied Workers, Local 996, IBT ("Teamsters"), Paul Culpepper, and Wren Whittle oppose this motion.

## FACTUAL BACKGROUND

Plaintiffs seek recovery against City Express Defendants for severance pay and vacation benefits allegedly owing to former employees of Plaintiffs pursuant to a collective bargaining agreement ("CBA"). Plaintiffs assert violations of the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"). In 1976, Defendant City Express entered into a CBA with the Teamsters Union. Certain employees, including Culpepper and Whittle, performed labor under this agreement. Section 39 of the CBA provides for a separation allowance to be paid to regular full-time employees, such as Culpepper and Whittle, who have completed one or more years of service and who are "permanently terminated from employment for reasons clearly beyond his own control due to a permanent reduction in the work force." Section 39 provides a formula for calculating the severance allowance.[1] Section 27 of the CBA provides for vacation benefits to be paid to bargaining unit employees.

On February 21, 1985, City Express, through its president and principal shareholder Richard Emery, notified the Teamsters that effective March 3, 1985, City Express would discontinue its operations. On March 3, 1985, City Express terminated all of its employees. Allegedly, many of these employees immediately gained employment with Martin Van and Storage, Inc.—the company that purchased the accounts of City Express. Apparently, by their acceptance of employment with Martin Van and Storage, these employees may not be eligible for the severance pay allowance. The record does not indicate whether Culpepper and Whittle accepted employment with Martin Van and Storage.

Plaintiffs allege that through a series of letters written by Mr. Emery on behalf of City Express after the termination of operations City Express acknowledged the debt payable to the former employees and led Plaintiffs to believe that the severance pay allowance would be paid to the affected employees. Plaintiffs instituted suit after discovering City Express Defendants would not fulfill their obligations under the CBA to pay the benefits. City Express Defendants now move to dismiss the Amended Complaint.

## DISCUSSION

### A. STANDARD OF REVIEW

#### 1. *Motion to Dismiss under Rule 12(b)(6)*

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), this Court must accept as true Plaintiffs' allegations contained in the complaint and view them in the light most favorable to Plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

#### 2. *Summary Judgment standard*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to

---

1. A severance pay plan is an employee welfare benefit plan to which ERISA applies. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir.),

*cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical. Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question of whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *im-*plausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis original), *citing, Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

## B. COUNT I (VIOLATIONS OF ERISA ASSERTED BY TEAMSTERS)

In Count I, Plaintiff Teamsters alleges that City Express Defendants violated several provisions under ERISA. City Express Defendants assert five arguments in support of dismissing this count.

### 1. Standing

City Express Defendants initially contend the Teamsters lack standing to enforce violations of ERISA's provisions. City Express Defendants maintain that the Teamsters is not a "participant or beneficiary" under 29 U.S.C. § 1132(a). Plaintiffs acknowledge that § 1132(a) does not expressly confer standing on a labor union. Plaintiffs maintain, however, that 29 U.S.C. § 185(b) confers standing on a labor organization to sue on behalf of the employees whom it represents. Plaintiffs cite *Air Line Pilots Assoc. v. Northwest Airlines, Inc.*, 627 F.2d 272, 277 (D.C.Cir.1980) in support.

In *Air Line Pilots*, the court resolved a union's ERISA claim. Standing was not discussed, however. Apparently, standing was not argued before either the district court or the appellate court. Thus, Plaintiffs' reliance on *Air Line Pilots* is specious at best.

Plaintiffs further maintain that the Teamsters have standing since the employee welfare benefit plan (severance allowance plan) is contained within the CBA. Thus, Plaintiffs argue that since the Teamsters has standing to enforce the CBA's provisions it also has standing to enforce the ERISA violations stemming from these

provisions. Defendants correctly point out that Count I only alleges violations of the substantive provisions of ERISA and not the CBA. Thus, it does not necessarily follow that Plaintiffs have standing to enforce violations of ERISA.

The Ninth Circuit addressed the standing issue in *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406 (9th Cir.1988). There the court noted that ERISA § 502(a), 29 U.S.C. § 1132(a), "does not provide an exhaustive list of eligible plaintiffs." *Id.* at 1410, n. 6. In *Fentron Industries v. Nat'l Shopmen Pension Fund*, 674 F.2d 1300, 1304 (9th Cir.1982), the Ninth Circuit recognized that where a party does not fall within one of the groups listed in ERISA § 502(a) he may still have standing if he (1) suffered an injury in fact, (2) arguably falls within the zone of interests protected by the statute allegedly violated, and (3) shows that the statute does not preclude suit. In *Murdock*, the court held that, under the *Fentron* test, the union lacked standing for two reasons. First, the union was not within one of the groups listed in the ERISA statute. 861 F.2d at 1410. Second, "[b]ecause the union was never the designated bargaining unit for the plan participants, it cannot allege the specific and personal injuries *Fentron* requires." 861 F.2d at 1410, n. 6.

In this case, it is undisputed that Plaintiff Teamster is neither a participant nor beneficiary under § 1132(a). Unlike the union in *Murdock*, however, the Teamsters was the bargaining representative for the plan participants. *See* CBA at 1. *Murdock* implies that if a union acts as the bargaining unit representative for the plan participants then the union has standing to pursue the plan participants' claims. This Court will follow *Murdock's* implication and finds that the Teamsters has standing under the *Fentron* criteria.

By conferring standing on the Teamsters judicial economy will be promoted. Defendants' counsel conceded at oral argument that the plan participants can be named individually as plaintiffs. Thus, there is no question that these participants can be joined in this suit. Judicial economy, therefore, will be promoted by allowing the bargaining unit representative to prosecute the claims collectively instead of requiring each plaintiff to assert the same claims. Such a finding is supported since the participants' representative, who negotiated the plan on behalf of the participants and is knowledgeable of ERISA's provisions, will, in most cases, protect the participants' rights by seeking enforcement of ERISA's provisions.

By finding that the Teamsters has standing it is unnecessary to reach Plaintiffs' arguments regarding assignments and associational standing.

### 2. Statute of Limitations

City Express Defendants next argue that Plaintiffs claims are barred by the three year statute of limitations under Section 413 of ERISA, 29 U.S.C. § 1113. Section 1113 provides:

(a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earliest of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation. 29 U.S.C. § 1113.

Defendants argue that as early as April 23, 1985, Plaintiffs had actual notice that their benefits would not be paid. *See* Letter dated April 23, 1985, from Richard Emery, President of City Express, to Arthur

Rutledge, President of Teamsters Local No. 996. Defendants further state that they advised Teamsters that "there are no monies being issued to any company or person." *Id.* at 2. Defendants further assert that Plaintiffs allege no acts occurring within three years of filing the Complaint (January 12, 1987) which give rise to recovery. Thus, Defendants argue that Plaintiffs' claims are time-barred under § 1113.

Conversely, Plaintiffs contend that, through a series of letters written on behalf of City Express, Defendants misled Plaintiffs into believing that the severance allowance would be ·paid. *See* Exhibits "D"–"K" attached to Plaintiffs' Amended Complaint. Plaintiffs argue that as late as June 20, 1989, Defendants acknowledged the debt to the former employees and gave written assurances that a lien would be granted to secure payment of the debt. Exhibit "J" to Amended Complaint. Thus, Plaintiffs maintain that City Express Defendants either concealed or fraudulently misrepresented their intention not to pay the benefits. Accordingly, Plaintiffs argue that the six year statute, and not the three year statute should apply.

A review of the correspondence between the parties supports both parties' positions. While it is true that the Plaintiffs knew at or near the time of their termination that certain benefits were owing the letters attached to the Amended Complaint reveal that City Express, on numerous occasions acknowledged the debt and expressed optimism in satisfying this liability in full. In one instance, City Express expressed its desire to settle the matter in order to avoid litigation and incur the expenses associated with such litigation. Defendants do not dispute these facts but contend that at no time did they conceal that the severance allowance was payable and that Plaintiffs were thus not prevented from filing suit within three years.

As shown above, 29 U.S.C. § 1113 contains a tolling provision in cases of fraud and concealment. Moreover, it is black letter law that the equitable tolling doctrine "is read into every federal statute of limitation." *Holmberg v. Armbrecht,*

327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). This Court finds that Defendants' repeated acknowledgement of liability to Plaintiffs, coupled with Defendants' assurances of payment so long as Plaintiffs remained patient served to equitably toll the statute of limitations. Therefore, Plaintiffs' claims under ERISA are not time-barred.

*3. Failure to Exhaust Grievance and Arbitration Procedure*

City Express Defendants next argue that Count I is barred for failure to exhaust the grievance and arbitration procedure under the CBA. City Express Defendants cite *Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980) in support. In *Amato,* the court initially noted that "[i]t is true that the text of ERISA nowhere mentions the exhaustion doctrine." *Id.* at 566 (footnote omitted). The court then held, however, "we conclude from the legislative history and the text of ERISA that Congress did intend to grant such authority to the courts, and that sound policy requires the application of the exhaustion doctrine in suits under the Act." *Id.* at 566–67. Defendants thus assert that Plaintiffs were required to exhaust the grievance/arbitration procedure under the CBA before maintaining this action in federal court.

Plaintiffs argue that Defendants failed to set forth a claims procedure in compliance with ERISA's provisions. Plaintiffs also maintain that since their claims extend not only to violations of ERISA's provisions, but also to violations of the terms of the plan contained in the CBA, resort to the grievance procedure in the CBA alone would be inadequate. Plaintiffs cite *Amaro v. Continental,* 724 F.2d 747 (9th Cir. 1984) where the court held that where statutory ERISA claims are involved exhaustion is not required. Defendants attempt to distinguish *Amaro* arguing that the alleged violations in this case stem solely from violations of the CBA.

In *Amaro,* the Ninth Circuit referred to *Amato* and *Challenger v. Local Union No. 1 of Int'l Bridge,* 619 F.2d 645 (7th Cir. 1980) and noted that those cases involved

plans where internal appeal procedures mandated by ERISA were in place. The court stated that in cases involving interpretation of the plans, like *Amato* and *Challenger*, exhaustion is required in order to allow the trustees to interpret their own plans. *Id.* at 751. In cases where the claims solely derive from the ERISA statute the court held that resolution of such a dispute is "a task for the judiciary, not an arbitrator." *Id.*

■ In this case, many of Plaintiffs' claims involve only statutory violations of ERISA statute with no interpretation of the plan under the CBA necessary. The remaining claims contained in Count I, however, require interpretation of the plan under the CBA. Thus, under *Amaro,* as to those claims where no CBA interpretation is necessary exhaustion is not a prerequisite to suit. But, as to those situations "where the same essential facts give rise to both a[n ERISA] claim and a contractual grievance" exhaustion is required unless otherwise excused. *Id.*

■ In this case, Plaintiffs argue that on the claims which require exhaustion, exhaustion should be excused because resort to the grievance procedure would have been futile. The case law recognizes an exception to the exhaustion doctrine where exhaustion would be futile or inadequate. *Glover v. St. Louis–S.F. Ry. Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Ritza v. Int'l Longshoremen's and Warehousemen's Union,* 837 F.2d 365 (9th Cir. 1988) (per curiam); *Bailey v. Bicknell Minerals, Inc.,* 819 F.2d 690 (7th Cir.1987). Plaintiffs assert that the first two steps in the grievance procedure requires review by the employee's supervisors. Since the supervisors were terminated along with the other employees Plaintiffs correctly note the impossibility of meeting the first two steps. Defendants acknowledge the first two steps were unavailable. Defendants contend, however, the third step of the grievance process was available. The third step requires convening the "Citywide Board of Adjustment." Plaintiffs counter, via the affidavit of Henry DeCosta, that this board was dissolved prior to 1985. De-

fendants do not argue against this contention either, but state that the futility excuse is unavailable unless the party *attempts* to use it.

In *LeBoutillier v. Air Line Pilots Assoc.,* 778 F.2d 883 (D.C.Cir.1985), the court held that the futility excuse does not apply where the plaintiff never puts his futility theory to the test by filing a protest. Here, even *attempting* to utilize the grievance procedure would be futile since the Citywide Adjustment Board was not in existence. Plaintiffs did write a letter shortly before the termination of employees "reminding" City Express of its obligations under the plan.

Alternatively, Defendants assert that the Citywide Adjustment Board could have been reconstituted. Defendants offer no support for their position, however. In the absence of such proof this Court presumes that an attempt to exhaust the third step would have been futile.

Lastly, City Express Defendants argue that Plaintiffs' futility claim must fail since the fourth step of the grievance procedure, arbitration, was available. Plaintiffs do not address this fourth step. Section 12.5 of the CBA sets forth the arbitration procedure. Under that section a dispute shall not be submitted to the arbitrator until the first three steps have been exhausted. In this case, this Court has determined that exhaustion of these three steps would be futile. Therefore, Plaintiffs arguably were not required to proceed to this fourth step.

Even assuming that Plaintiffs should have proceeded to arbitration the summary judgment evidence reveals that such a step was unnecessary. This Court previously noted the various admissions of Defendants acknowledging the debt to the former employees. In fact, in one instance Defendant Richard Emery informed Mr. Rutledge that Plaintiffs' "claim[s] ha[ve] been placed with the other amounts due the unsecured creditors of City Express. When this matter is settled by way of the lawsuit, action will be taken to pay all unsecured creditors." *See* Letter dated January 26, 1989 from Richard Emery to Arthur Rutledge. Earlier, Mr. Emery in-

formed Mr. Rutledge that City Express was "having someone verify the amounts...." *See* Letter dated May 18, 1988 from Richard Emery to Mr. Arthur Rutledge.

It appears to this Court that Defendants are attempting to invoke a technical argument in order to avoid satisfying a liability to Plaintiffs which they have acknowledged on numerous occasions. In *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d 344, 350–51 (9th Cir.1989), the court recognized that where a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered. The *White* court cited the Seventh Circuit decision in *Challenger v. Local Union No. 1 of Int'l Bridge, Structural, & Ornamental Ironworkers, AFL–CIO*, 619 F.2d 645 (7th Cir.1980) with approval. *Id.* at 350. In *Challenger,* the court refused jurisdiction and required the claimant to exhaust his administrative remedies where notice was inadequate. 619 F.2d at 648. The *Challenger* court stated that "the appropriate remedy [for failure to exhaust based on inadequate notice] would not be to dispense with compulsory arbitration (the appeal procedure required by the plan) but rather to extend the applicant's time for taking the appropriate steps." *Id.* In both *White* and *Challenger,* the courts remanded the cases for further exhaustion of administrative remedies. The courts in both *White* and *Challenger* recognized equitable considerations of fairness and efficiency in remanding the claims.

■ By entering into a CBA which provides a plan under ERISA with an applicable grievance procedure the parties opted to resolve their disputes under the plan in a mutually satisfactory manner. Due to the unique factual circumstances presented in this case the grievance procedure was not utilized. Neither party demonstrates that reference to arbitration in accordance with step four of the grievance procedure is infeasible. Moreover, by acknowledging its liability to Plaintiffs City Express Defendants are estopped from relying on the exhaustion defense. Therefore, based on the equitable concerns of fairness and efficiency this Court refers for consideration by the arbitrator (selected under step four) Plaintiffs' claims which require interpretation of the plan under the CBA. This Court shall retain jurisdiction, however, as to those claims where no interpretation of the terms of the plan under the CBA is required, i.e., statutory violations.

### 4. Whether Emery and City Express are "Fiduciaries"

■ ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), defines fiduciary as follows:

Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

Defendants contend that neither Emery nor City Express were fiduciaries under the plan since they did not exercise discretion over the plan. Defendants maintain that since the benefits were to be paid out of the general assets of the company, as opposed to a separate fund, they could not have been acting in a fiduciary capacity. Defendants further contend that all claims would be processed through the grievance procedure provided in the CBA.

Plaintiffs initially assert that a separate trust fund should have been established by Defendants for payment of the severance benefits. Plaintiffs further contend that since the claims were payable from the general assets of City Express and since Richard Emery and City Express exercised discretion and control of the general assets City Express Defendants were fiduciaries under 29 U.S.C. § 1002(21)(A).

Based on the arguments presented by the parties a genuine issue of material fact exists whether Defendants acted as fiduciaries. Thus, summary judgment is denied on this claim.

### 5. *Whether Count I is barred to the extent it seeks relief for vacation benefits*

Based on the recent Supreme Court case of *Massachusetts v. Morash*, 490 U.S. 107, 114, 109 S.Ct. 1668, 1672, 104 L.Ed.2d 98, 108 (1989) Defendants argue that Plaintiffs' claims for vacation benefits which are payable out of the general assets as a payroll practice cannot be maintained since these claims do not implicate ERISA. Plaintiffs do not dispute this contention and dismissal is required under *Morash* to the extent that Plaintiffs seek that vacation benefits as part of an employee welfare benefit plan. Accordingly, Defendants' motion will be granted insofar as Plaintiffs seek recovery of vacation benefits under ERISA.

## C. COUNT II (SECTION 301 OF LMRA)

### 1. *Exhaustion of Grievance Procedure*

City Express Defendants argue that Plaintiffs failed to exhaust the CBA grievance procedure before filing suit. Neither party disputes that exhaustion is required under the LMRA. *Republic Steel v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Plaintiffs claim, once again, that resort to this procedure would have been futile. Defendants disagree stating that the employees could resort to the City-wide Board of Adjustment or an arbitrator under Section 12 of the CBA. The exhaustion issue in the ERISA context was discussed, *supra.*

The failure to exhaust internal union remedies is a matter of abatement that must be raised in a motion to dismiss, not in a motion for summary judgment. *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir.1988) (per curiam). Defendants have satisfied this requirement. Generally, "federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (footnote omitted) (emphasis in original). "Where, however, 'doctrinaire application of the exhaustion rule would defeat the overall purposes of federal labor relations policy,' exceptions to the exhaustion requirement have been recognized." *Ritza*, 837 F.2d at 370, *quoting*, *Glover v. St. Louis–S.F. Ry. Co.*, 393 U.S. 324, 329–30, 89 S.Ct. 548, 551–552, 21 L.Ed.2d 519 (1969). For instance, exhaustion is excused where pursuit of the contractual remedies would be "wholly futile." *Glover*, 393 U.S. at 330, 89 S.Ct. at 551. *See also Clayton v. Int'l Union*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

Although Plaintiffs allege that resort to the grievance procedure in 1985 would have been futile; in reality, exhausting their remedies under the grievance procedure was unnecessary. From the outset, Richard Emery and City Express acknowledged their debt for benefits to the employees. Thus, while arguably the fourth step of the grievance procedure remained available there was no need to arbitrate these claims based on City Express Defendants' representations. Therefore, City Express Defendants are estopped from asserting the exhaustion defense. Accordingly, since it is now apparent that the claims are in issue and in the interests of justice, these claims are referred to arbitration in accordance with the CBA for a determination of the benefits owed and the persons entitled to such benefits. *See generally, Amato*, 618 F.2d 559 (where ERISA plan stemmed from CBA remand to grievance procedure proper where plaintiff failed to exhaust administrative remedies).

### 2. *Statute of Limitations*

Defendants argue that under either the six-month statute of limitations in *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), or the two year statute under HRS

§ 657–11 Plaintiffs claims are time-barred. In *DelCostello*, however, the Supreme Court held that where an employee alleges a claim against his employer for breach of the CBA and the union for breach of the duty of fair representation the claim presented was a "hybrid" claim. 462 U.S. at 169, 103 S.Ct. at 2293. In "hybrid" cases, the court is to borrow the National Labor Relations Board's statute of limitations which is six months. This case does not involve a hybrid claim; thus the six month statute does not apply.

 Where the claim presented is not a "hybrid" claim the court is to "borrow" the "most suitable statute or other rule of timeliness from some other source." *Id.* at 158, 103 S.Ct. at 2287. Plaintiffs argue that Defendants' choice of HRS § 657–11 should not be used since it only applies to actions brought in state court. Plaintiffs are correct. Section 657–11 provides:

> Whenever any federal statute provides for damages or equitable relief and neither the federal statute nor any specific state statute specifies the period within which suit may be brought, the suit, *if brought in a state court*, shall be commenced within two years from the date the cause of action arises or be thereafter barred.

*See also Hawaii Carpenters v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 297 (9th Cir.1987) ("the statute selected by the district court applies on its face only to actions 'brought in a state court.'" (citation omitted)).

This Court finds that HRS § 657–1(1) constitutes the most suitable statute for statute of limitations purposes. Section 657–1(1) provides:

> "The following actions shall be commenced within six years next after the cause of action accrued, and not after: (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court. . . ."

HRS § 657–1(1).

This statute was "borrowed" in *Waiola Carpenter Shop*, 823 F.2d at 297. Accordingly, Plaintiffs' claims are not time-barred.

Even if the six-year statute of limitations does not apply, for the same reasons stated in the ERISA discussion of the applicable statute of limitations, this Court finds that City Express Defendants' repeated acknowledgement of its obligation to Plaintiffs served to equitably toll the statute of limitations. Therefore, Plaintiffs have timely filed their claim under either statute of limitation period.

**D. COUNT III**

In this count, Plaintiffs Culpepper and Whittle seek severance pay and vacation benefits from Defendants. Defendants move to dismiss for the same reasons that they moved to dismiss Count I except as to standing which Defendants recognize. Thus, the same analysis employed in discussion of Count I in this order applies to this section as well. Therefore, Plaintiffs Culpepper and Whittle's claims for severance benefits are referred to arbitration in accordance with step four of the grievance procedure outlined in the CBA. As to Plaintiffs' claim for vacation benefits, however, this claim is invalid under *Morash*, 490 U.S. at 114, 109 S.Ct. at 1672, 104 L.Ed.2d at 108, and must be dismissed.

**ORDER**

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss or in the alternative for Summary Judgment be DENIED on the severance benefits claims in Count I. As to Plaintiffs' vacation benefits claims in Count I Defendants' motion is GRANTED. It is further ORDERED that Plaintiffs' severance benefits claims in Count I which require interpretation of the CBA be determined through arbitration in accordance with step four of the grievance procedure.

As to Count II, it is ORDERED that Defendants' Motion to Dismiss or alternatively for Summary Judgment be DENIED. It is further ORDERED that Plaintiffs' claims alleged in Count II be determined

**1436**

through arbitration in accordance with step four of the grievance procedure.

As to Count III, it is ORDERED that Defendants' Motion to Dismiss or alternatively for Summary Judgment be DENIED as to the severance benefits claims. It is further ORDERED that Defendants' motion is GRANTED on Plaintiffs Culpepper and Whittle's claims for vacation benefits under ERISA. It is further ORDERED that Plaintiffs Culpepper and Whittle's claims for severance benefits be determined through arbitration in accordance with step four of the grievance procedure.